UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENATO C PIZARRO and MERCEDITA D. PIZARRO,<br><br>Plaintiffs,<br><br>v.<br><br>ASTRA FLOORING COMPANY, et al.,<br><br>Defendants. | No. C 19-08425 WHA<br>Related to<br>No. C 19-08427 WHA<br><br>**ORDER DENYING MOTION TO REMAND** |

**INTRODUCTION**

In this asbestos action, plaintiffs seek remand to state court. Because defendant has established a colorable government contractor defense, plaintiffs' motion to remand is **DENIED**.

**STATEMENT**

The complaint alleges that Renato C. Pizarro has been diagnosed with mesothelioma resulting from exposure to asbestos. He became exposed to asbestos while serving as a mechanic aboard various ships in the United States Navy from 1975 through 1998. The complaint asserts asbestos-related injury claims by him and a loss-of-consortium claim by his wife, Mercedita D. Pizarro (Compl. ¶¶ 1, 6, 138, Exh. A at 1–10).

The complaint was filed in state court against companies that either manufactured products containing asbestos or operated and controlled workspaces containing asbestos during the relevant time period. Most relevant here, plaintiffs named National Steel and Shipbuilding

Company ("NASSCO") in claims for general negligence, vicarious liability, premises liability, and loss of consortium. The complaint did not assert any product liability claims against NASSCO. It expressly clarified that the claims against NASSCO did not relate to "its design and manufacture of military equipment" but instead remained "limited to general negligence and premises liability," as well as NASSCO's failure to warn of dangerous conditions (*id*. at ¶ 19).

NASSCO failed to remove within 30 days. Then, in late December, it received plaintiffs' unverified responses to interrogatories. Shortly thereafter, NASSCO filed a notice of removal under Sections 1331, 1442(a)(1), and 1446 of Title 28 of the United States Code (Dkt. No. 1 at ¶ 44). The notice asserted federal jurisdiction under the Federal Officer Removal Statute, "derivative" sovereign immunity, and the "federal enclave" defense. NASSCO filed a series of declarations in support of the notice of removal, including one by Retired Admiral Roger B. Horne and another by NASSCO Program Manager Stephen B. Severs. John Crane, Inc. ("JCI"), another defendant named in plaintiffs' complaint, removed on the same day, also citing the Federal Officer Removal Statute. A third defendant, Spirax Sarco, Inc. ("Sarco"), joined NASSCO and JCI in their removals; a January order related the two cases. Plaintiffs have since dropped all claims against JCI, but Sarco remains joined as to NASSCO's notice of removal (Dkt. Nos. 13, 51 54, 65).

Plaintiffs now challenge NASSCO's removal and move to remand to state court. Specifically, plaintiffs argue: (1) NASSCO's removal was untimely; (2) the Federal Officer Removal Statute does not apply; (3) NASSCO does not enjoy derivative sovereign immunity under *Yearsley*; and (4) the "federal enclave" defense does not apply. Plaintiffs also object to the declarations NASSCO submitted in support of its notice of removal. This order finds that the Federal Officer Removal Statute applies, so it does not reach NASSCO's *Yearsley* or federal enclave defenses.

**ANALYSIS**

Remand to state court may be ordered either for procedural deficiency or for a lack of jurisdiction. 28 U.S.C. §§ 1441(a); 1447(c). Plaintiffs argue both apply here.

1. **TIMELINESS.**

Plaintiffs' motion argues that NASSCO removed more than 30 days after they served their complaint, which constitutes a procedural defect. This misconstrues the removal statute. Defendants ordinarily must remove "within 30 days after the receipt . . . of a copy of the initial pleading setting forth the claim for relief." 28 U.S.C. § 1446(b)(1). But, our court of appeals has recognized that the removal period begins only "[a]fter a defendant learns that an action is removable." This creates two distinct thirty-day windows during which the defendant can remove. The first, which plaintiffs emphasize, "run[s] from defendant's receipt of the initial pleading." This only applies, however, "when that pleading affirmatively reveals on its face the facts necessary for federal court jurisdiction." The second, which applies if the initial pleading lacks sufficient detail for the defendant to conclude that the case can be removed, begins once "a defendant receives a copy of an amended pleading, motion, order or other paper from which it can determine that the case is removable." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (internal citations and quotation marks omitted).

Plaintiffs' complaint did not contain sufficient information from which NASSCO could have discerned that it could remove, so the first window does not apply. Plaintiffs' complaint did not name any particular job sites or vessels. From the complaint alone, NASSCO could only have discerned that Mr. Pizarro had previously worked "aboard ships and vessels undergoing overhaul and/or repair at various shipyards and naval stations, . . . including but not limited to [NASSCO] in San Diego" and that it allegedly "caus[ed Mr. Pizarro's] exposure[] to asbestos from the removal and installation of asbestos products" on "commercial and U.S. Navy ships" docked at NASSCO's premises (Comp. ¶ 19, Exh. A at 7–10). After the initial 30-day window closed, NASSCO learned through unverified responses to interrogatories that plaintiff had apparently been exposed to asbestos while aboard the USS BRISTOL COUNTY, a ship constructed by NASSCO and commissioned by the Navy, during an overhaul on NASSCO's premises (Dkt. No. 1, Exh. C at 30–34). NASSCO's argument for removal relies on the assertion that the Navy provided specifications governing the USS BRISTOL COUNTY overhaul, but it had no way of knowing that Mr. Pizarro worked aboard the USS BRISTOL

3

COUNTY until it received plaintiffs' responses to interrogatories. Our court of appeals has held that defendants need not guess as to whether a case may be removed "until they've received a paper that gives them enough information to remove," since premature removal may "subject [defendants] to fees and costs, and potentially Rule 11 sanctions, for filing a baseless notice of removal." *Durham*, 445 F.3d at 1251. Thus, the thirty-day window opened only after NASSCO received the responses to interrogatories on December 23. It filed its notice of removal on December 26.

NASSCO thus timely filed its notice of removal. This preliminary question of timeliness, however, remains distinct from the merits of whether NASSCO properly removed. *Id*. at 1254.

### 2. THE FEDERAL OFFICER REMOVAL STATUTE.

Turning to the merits, the notice of removal first argues that NASSCO may remove under 28 U.S.C. §1442(a)(1), the Federal Officer Removal Statute. The statute "authorizes removal of a civil action brought against any person acting under an officer of the United States for or relating to any act under color of such office." *Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014) (internal citations and quotations omitted).

Our court of appeals has held that Section 1442(a)(1) shall be construed broadly in favor of removal. Removal under Section 1442(a)(1) is not subject to the well-pleaded complaint rule, and defendants removing thereunder may remove an entire action unilaterally, without the consent of other defendants. *Durham*, 445 F.3d at 1253. To remove this action under Section 1442(a)(1), NASSCO only need establish: (1) that it is a person within the meaning of the statute; (2) that it can assert a colorable federal defense; and (3) that there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiffs' claims. *Id*. at 1251. The parties do not dispute the first element.

Turning to the second element, NASSCO asserts the government contractor defense. This defense applies "when the Government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law, incorporates this decision into a military contractor's contractual obligations, thereby limiting the contractor's ability to

4

accommodate safety in a different fashion." In other words, a government contractor can escape state tort liability if it can show "[t]he Government made me do it." *In re Hawaii Fed. Asbestos Cases*, 960 F.2d 806, 813 (9th Cir. 1992) (citations omitted).

The complaint limited plaintiffs' claims against NASSCO to general negligence and premises liability, even specifying that any claims against NASSCO "are not related to its design and manufacture of military equipment" (Compl. ¶ 19). Plaintiffs undoubtedly narrowed their pleading in this way to prevent NASSCO from removing under the government contractor defense, for that defense "is only available to contractors who design and manufacture military equipment." *Cabalce v. Thomas E. Blanchard & Assocs.*, 797 F.3d 720, 731 (9th Cir. 2015). As the notice of removal emphasized, however, plaintiffs' complaint only carved NASSCO out from the *product and design defect* claims; the complaint still named NASSCO in a *failure-to-warn* claim (Dkt. No. 1 at 23 n.5). Our court of appeals has held that defendants may remove a failure-to-warn claim under the government contractor defense if the defendant shows, by a preponderance of the evidence, that "the Navy exercised its discretion by prescribing certain warnings and prohibiting others without its express approval." *Leite*, 749 F.3d at 1123. Moreover, if the failure-to-warn claim may be removed under Section 1442(a)(1), then the *entire action* may be removed, even if plaintiffs' other claims would not have been independently removable. *Murphy v. Kodz*, 351 F.2d 163, 166 (9th Cir. 1965). Thus, the issue of whether the government contractor defense allows NASSCO to remove the entire action under Section 1442(a)(1) turns on whether NASSCO can demonstrate, by a preponderance of the evidence, that the defense applies to plaintiff's failure-to-warn claim. *Cabalce*, 797 F.2d at 731. This can be decided under a straightforward application of *Leite*.

To establish a government contractor defense against plaintiffs' failure-to-warn claims, NASSCO must show: "(1) the Navy exercised its discretion and approved certain warnings for [NASSCO's] products, (2) [NASSCO] provided the warnings required by the Navy, and (3) [NASSCO] warned the Navy about any asbestos hazards that were known to [it] but not to the Navy." *Leite*, 749 F.3d at 1123. At the removal stage, NASSCO "need not win [its] case."

5

1 All it must prove "by a preponderance of the evidence is that its government contractor defense

2 is colorable." *Id*. at 1124 (quotation marks omitted).

3 Turning to the first element, a defendant must show "a continuous exchange and back
4 and forth dialogue between the contractor and the government," that amounts to "more than a
5 cursory rubber stamp." *Cabalce*, 797 F.3d at 731. To demonstrate this, NASSCO has
6 submitted declarations by retired Admiral Roger B. Horne and NASSCO Program Manager
7 Stephen B. Severs. Admiral Horne previously served as "Chief Engineer and Deputy
8 Commander, Naval Sea Systems Command ("NAVSEA") for Ship Design and Engineering,"
9 during which time he states he "was . . . responsible for maintaining naval ship military
10 specifications and for monitoring compliance with the specifications by all vendors and
11 contractors of naval equipment." Admiral Horne never oversaw the overhaul of ships or
12 vessels at NASSCO specifically. His declaration states categorically, however, that for
13 "[a]ll private contractors, such as NASSCO," the Navy "dictated every aspect of the design,
14 manufacture, installation, overhaul, repair, written documentation, safety conditions and
15 warnings associated with its ships and equipment and did not permit deviations from its
16 contractors." This would have included "detailed direction as to the kinds of information to be
17 included, including warnings" (Horne Decl. ¶¶ 2(a), 15–16).

18 In their motion to remand, plaintiffs emphasize that neither NASSCO's submitted
19 declarations nor the notice of removal refer to any particular military specification or
20 contractual provision (Dkt. No. 57-1 at 19). They also submit a declaration by retired Navy
21 Captain Francis J. Burger disputing Admiral Horne's description of the extent to which the
22 Navy exercised its discretion in controlling warnings and communications (Burger Decl.
23 ¶¶ 24–25). Plaintiffs' arguments run contrary to *Leite*. There, our court of appeals held that
24 similar declarations, including one from Admiral Horne that described the extent to which
25 "the Navy issued detailed specifications governing the form and content of all warnings that
26 equipment manufacturers were required to provide, both on the equipment itself and in
27 accompanying technical manuals," sufficed for the first element, at least at the removal stage.
28 749 F.3d at 1123. This remained true even despite plaintiffs' "extensive evidence [disputing

Admiral Horne's declaration,] . . . including military specifications, technical manuals, warning label guides, and deposition excerpts." *Id*. at 1122. Thus, in the context of removal, NASSCO's submitted affidavits suffice for the first element.

Turning to the second element, plaintiffs do not appear to contest that NASSCO "performed its ship construction and repair work in conformance with government specifications" (Dkt. No. 64 at 5). Moreover, the Severs declaration specifically states that NASSCO complied with the Navy's specifications (Severs Decl. ¶ 10). NASSCO has thus fulfilled the second element.

To fulfill the third element, NASSCO "need not prove that the Navy would have forbidden it to issue asbestos warnings had [it] requested the Navy's approval." *Leite*, 749 F.3d at 1123. That said, the Horne declaration states explicitly that this had been the case: "[a]ny attempt by NASSCO to include a cautionary statement concerning asbestos in a technical or instruction manual would have been futile as it would have been rejected by the U.S. Navy as contrary to [military specifications]." This remained the case "even after [the Navy learned] in the late 1960's that there was a connection between exposure to asbestos and cancer" (Horne Decl. ¶ 16). Our court of appeals held a similar declaration by Admiral Horne to be sufficient in *Leite*. F.3d at 1123–24. The Severs declaration provides additional support, stating that "no military vessels would be accepted by the U.S. Navy from a private construction/repair yard without strict compliance . . . of all requirements," including those related to the display of "hazard information" (Severs Decl. ¶ 14). Plaintiffs, relying on the Burger declaration, dispute these statements (Burger Decl. ¶ 26). *Leite* nevertheless controls here, and under *Leite*, NASSCO's submitted declarations suffice at the removal stage. Having fulfilled all three elements, NASSCO has asserted a colorable government contractor defense.

Turning now to the final element of Section 1442(a)(1) removal, NASSCO must show a causal nexus between its own actions, taken pursuant to the Navy's directions, and plaintiffs' claims. *Durham*, 445 F.3d at 1252. At oral argument, plaintiffs presented a new case, *Morton v. 3M Co.*, No. CV 18-5956-R, 2018 WL 4520950 (C.D. Cal. 2018) (Judge Manuel L. Real), to dispute whether a causal nexus exists. In *Morton*, Judge Manuel Real remanded after

7

1  NASSCO removed an asbestos case from state court under the Federal Officer Removal
2  Statute, supported by a declaration by Admiral Horne. Judge Real remanded because
3  NASSCO relied entirely on affidavits and failed to identify any Navy specifications governing
4  NASSCO's conduct. *Id*. at *2. There are similarities between our case and *Morton*, but there
5  is one important difference. *Morton* did not consider failure-to-warn claims against NASSCO.
6  *Id*. at *1. *Leite*, by contrast, explicitly considered what defendants must show to remove under
7  the federal contractor defense in failure-to-warn claims, and it controls in this case.

The undersigned judge respects Manuel Real and agrees with his sentiment that the removal petitions could and should cite to chapter and verse in the Navy specifications as to where the contractor was compelled to act as it did. But, the court of appeals has permitted contractors to substitute friendly declarations by retired admirals in more conclusory terms, as opposed to citing to the specifications that actually impose straitjackets on contractors. *Leite*, 749 F.3d at 1123. It is therefore with some misgivings that this order finds a causal nexus and allows this removal under Section 1442(a)(1).

### 3. EVIDENTIARY OBJECTIONS.

Plaintiffs object in full to NASSCO's submitted declarations. Invoking Rules 401, 402, 602, 702, 802, 803, 1001, and 1004 of the Federal Rules of Evidence, they argue that the Horne and Severs declarations are "composed entirely of conclusory, speculative statements without foundation and inadmissible hearsay without exception" (Dkt. No 57-2 at 4, 15). They rely on *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 145, 149 (D. Mass. 2009), a nonbinding case in which a district court granted remand despite defendants' reliance on a similar declaration by Admiral Horne. *Holdren*, decided five years before *Leite*, acknowledged that different district courts had reached different results as to whether declarations like Admiral Horne's sufficed to support removal under the Federal Officer Removal Statute. *Id*. at 136. In 2014, *Leite* provided clarity for our circuit when it concluded that Admiral Horne's declaration "[was] supported by an adequate foundation based on [Horne's] knowledge of Navy procurement policies" and was admissible, at least for removal purposes, under Federal Rule of Evidence 702. 749 F.3d at 1123. Here, as there, Admiral

8

Horne's extensive training and experience maintaining naval ship military specifications and monitoring compliance with specifications establishes an adequate foundation for his statements. Moreover, Admiral Horne's declaration does not substantiate a particular military specification governing the overhaul of the USS BRISTOL COUNTY, as plaintiffs seem to argue. Rather, it supports NASSCO's opinion as to what the Navy required of it. Admiral Horne's declaration may thus come in under Federal Rule of Evidence 702.

As for the Severs declaration, Mr. Severs previously served as an officer in the Navy and now works as NASSCO's program manager. His declaration states that he oversees "planning, maintenance, conversion and modernization of large Navy Amphibious Assault Ships" and that in this role, he has "developed first-hand knowledge of repair work performed by NASSCO aboard naval vessels, including Newport Class Tank Landing Ships" (Severs Decl. ¶¶ 2, 5, 8). Mr. Severs never did any work involving the USS BRISTOL COUNTY specifically, but his declaration nevertheless provides percipient testimony based on his professional experience dealing with the Navy. It helps underscore the extent to which the Navy exercises control over contractors like NASSCO. Thus, the declaration may come in under Federal Rule of Evidence 701.

Plaintiffs' evidentiary objections are thus **Overruled**. Importantly, this ruling on plaintiffs' objections remains within the context of this motion to remand and comes without prejudice to any future evidentiary objections.

NASSCO also filed evidentiary objections to plaintiffs' submitted declaration of Captain Burger. Those objections need not be addressed for NASSCO to remove this action under Section 1442(a)(1). Accordingly, they are **OVERRULED** as moot. This ruling also remains within the context of this motion to remand and comes without prejudice to any future evidentiary objections.

9

**CONCLUSION**

NASSCO has properly removed this action pursuant to 28 U.S.C. § 1442(a)(1). Plaintiffs' motion to remand is therefore **DENIED**.

**IT IS SO ORDERED.**

Dated: March 12, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE